*JS-6*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 12-9936-GW(SHx) | Date | April 18, 2013 |
| Title | David M. Emanuel v. The Los Angeles Lakers, Inc. | | |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | Deborah Gackle | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:                Attorneys Present for Defendants:

Seyed Abbas Kazerounian                          Joshua M. Briones
                                                 Esteban Morales

PROCEEDINGS: **DEFENDANT THE LOS ANGELES LAKERS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (F.R.C.P. 12(B)(6)), OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT (filed 02/25/13)**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's final ruling. Defendants' motion is GRANTED WITH PREJUDICE.

                                                                        :     15

                                            Initials of Preparer    JG

***David Emanuel v. Los Angeles Lakers***, Case No. CV-12-9936-GW (SHx)
Tentative Ruling on Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) or, in the Alternative, for Summary Judgment

### I. Background

Plaintiff David M. Emanuel ("Plaintiff" or "Emanuel") filed this putative class action suit against the Los Angeles Lakers ("Defendant" or "the Lakers") on November 20, 2012. *See generally* Docket No. 1. Plaintiff accuses the Lakers of violating the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, by sending him – and similarly situated plaintiffs – purportedly unsolicited text messages. *See generally* Docket No. 15.

The First Amended Complaint ("FAC") alleges that Plaintiff attended a Lakers game at Staples Center on October 13, 2012, during which the Lakers displayed the following statement to fans in the arena: "TEXT your message to 525377." FAC, Docket No. 15, ¶ 16. After viewing this statement, Plaintiff sent a text message – "I love you Facey. Happy Date Night" – to the Lakers "for the sole purpose of having Defendant put a personal message on the scoreboard[.]" *Id.* ¶ 18. Plaintiff alleges that Defendant did not inform him that by sending this text message he "would be consenting to receive future text messages" from the Lakers. *Id.* ¶ 17. Shortly thereafter, Plaintiff allegedly received an "unsolicited text message from the 525377 number attributed to Defendant," which stated:

> Thnx! Txt as many times as u like. Not all msgs go on screen. Txt ALERTS for Lakers News alerts. Msg&Data Rates May Apply. Txt STOP to quit. Txt INFO for info

*Id.* ¶ 19. This is the sole message challenged by Plaintiff in this lawsuit. Plaintiff claims that the Lakers sent this text by using an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1) "in order to attempt to solicit business from Plaintiff." *Id.* ¶ 20. Plaintiff asserts that Defendant's ATDS "has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." *Id.* ¶ 21. Because the Lakers allegedly did not receive Plaintiff's consent before sending him this "unsolicited" text message, Plaintiff claims that Defendant engaged in both (1) negligent and (2) "knowing/willful" violations of the TCPA. *Id.* ¶¶ 40-47. Accordingly, Plaintiff seeks statutory damages and injunctive relief for himself and members of the purported class. *See id.* at Prayer.

The Lakers filed the instant motion to dismiss or, in the alternative, summary judgment, on February 25, 2013. *See generally*, Def. Mot., Docket No. 17-1.

### II. Legal Standard

Plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim upon which relief can be granted for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also*

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."). A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. *See Twombly*, 550 U.S. at 558-59; *see also William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (confirming that *Twombly* pleading requirements "apply in all civil cases"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

In deciding a 12(b)(6) motion, the Court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and other extrinsic documents when "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

### III. Analysis

Defendant argues that Plaintiff's claims should be dismissed with prejudice because, by initiating communications with Defendant and requesting that a message appear on the Staples Center scoreboard, he consented to receiving the Lakers' "confirmatory" text message. Def. Mot. at 10. Defendant further argues that Plaintiff's "threadbare" allegations that the Lakers used an ATDS system do not suffice to survive a motion to dismiss.[1] Plaintiff, conversely, argues that because he did not *expressly* consent to receipt of Defendant's text message – and because he pled all known specific facts regarding the system allegedly used by the Lakers to contact him – the FAC sufficiently states claims for relief under the TCPA. *See generally* Pl. Opp., Docket No. 18.

"The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system ["ATDS"]; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). "The term [ATDS] means equipment that has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* "[A] system need not actually store, produce, or call randomly or sequentially generated numbers, it need only have the capacity to do it." *Satterfield v. Simon & Schuster*, 569 F.3d 946, 951 (9th Cir. 2009). The Ninth Circuit has held that a text message is a "call" within the meaning of the TCPA. *Satterfield*, 569 F.3d at 952.

"The TCPA allows autodialed and prerecorded message calls if the called party expressly consents to their use." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769 ¶ 29 (Oct. 16, 1992); *see also* 27 U.S.C. §

---

[1] In asking the Court to grant Defendant's alternative motion for summary judgment, Defendant submitted a declaration from Jeff Vick, president of the private mobile media vendor that sent the text message at issue in this case, purportedly demonstrating that "an ATDS was not used to send the single text message confirming Plaintiff's request." Def. Mot. at 17; Vick Decl., Docket No. 17-3, ¶¶ 4-5. Because the Court would conclude that it will grant Defendant's motion to dismiss with prejudice based on the allegations in the Complaint, it need not rely on the facts set forth in the Vick Declaration or reach Defendant's alternate request for summary judgment.

227(b)(1)(A). "[T]he TCPA is silent on the issue of what form of express consent – oral, written, or some other kind – is required." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1838 ¶ 21 (Feb. 15, 2012); *see also* 47 U.S.C. § 227(a) (TCPA definitions). But "under the prohibitions set forth in § 227(b)(1) . . . persons who knowingly release their phone number have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In re Rules and Regulations*, 7 FCC Rcd. at 8769, ¶ 31.

"In construing the extent and contour of [the TCPA], courts consistently and properly look to the purpose and history of the statute." *Ryabyschuck v. Citibank (S.D.) N.A.*, No. 11-CV-1236, 2012 U.S. Dist. LEXIS 156176, at *5-6 (S.D. Cal. Oct. 30, 2012) (citing *Mims v. Arrow Fin. Servs., LLC*, ___ U.S. ___, 132 S. Ct. 740, 745 (2012)). Courts "broadly recognize that not every text message or call constitutes an actionable offense; rather, the TCPA targets and seeks to prevent 'the proliferation of intrusive, nuisance calls.'" *Ryabyshuck*, 2012 U.S. Dist. LEXIS 156176, at *6 (citing *Mims*, ___ U.S. ___, 132 S.Ct. at 744). Recently, the Ninth Circuit emphasized that courts should look to the surrounding circumstances in determining whether particular calls "run afoul of the TCPA," and in so doing, courts "approach the problem with a measure of common sense." *Chesbro v. Best Buy Stores*, 697 F.3d 1230, 1234 (9th Cir. 2012); *see also Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1453 (9th Cir. 1992) ("Common sense not dogma is what is needed in order to explore the actual meaning of legislative enactments."). "[C]ontext is indisbutably relevant to determining whether a particular call is actionable under the TCPA." *Ryabyschuck*, 2012 U.S. Dist. LEXIS 156176, at *8-9 (citing *Chesbro*, 697 F.3d at 1234-35).

Here, the Court concludes that the challenged text message is not actionable under the TCPA. Plaintiff admits that he voluntarily sent a text to the Lakers seeking to display the contents of that message on the scoreboard at Staples Center. FAC ¶¶ 15,18. Though the Lakers allegedly failed to warn Plaintiff that he might receive a response, a "common sense" reading of the TCPA indicates that, by sending his original message, Plaintiff expressly consented to receiving a confirmatory text from the Lakers. "To hold otherwise would contradict the overwhelming weight of social practice: that is, distributing one's telephone number is an invitation to be called[.]" *Pinkard v. Wal-Mart Stores, Inc.*, No. CV 12-0292-CLS, 2012 U.S. Dist. LEXIS 160938, at *14 (N.D. Ala. Nov. 9, 2012); *see also Ibey v. Taco Bell Corp.*, No. 12-CV-0583-H, 2012 U.S. Dist. LEXIS 91030, at *7 (S.D. Cal. June 18, 2012). Indeed, when Plaintiff sought to display his love for "Facey" on the Staples Center jumbotron via text, it is difficult to imagine how he could have been certain that the Lakers received his message *without* a confirmatory response.

Furthermore, given that the Lakers' reply notified Plaintiff that "Not all msgs go on screen," Defendant's message provided Plaintiff with information relevant to his request. Had Plaintiff been planning to inform his date that a special message was forthcoming, Defendant's confirmatory response may have had the beneficial effect of tempering Plaintiff's (or his date's) expectations. While the specific impact of the Lakers' message is obviously not crucial for the purposes of the TCPA analysis, the fact that the confirmatory text included information relevant to Plaintiff's request demonstrates – in part – why the message challenged here is not the kind of "intrusive, nuisance [telemarketing] call[]" that Congress sought to prohibit in enacting the TCPA. *Mims*, ___ U.S.___, 132 S. Ct. at 745. For similar reasons, many federal courts have concluded that when a customer provides a company his or her phone number in connection with a transaction, he or she consents

to receiving calls about that transaction: "[T]he authorities are almost unanimous that voluntarily furnishing a cellphone number to a vendor or other contractual counterparty constitutes express consent." *Saunders v. NCO Fin. Sys.*, No. 12-CV-1750, 2012 U.S. Dist. LEXIS 181174, at *8 (E.D.N.Y. Dec. 19, 2012) (compiling cases including *Meyer*, 707 F.3d 1036, and *Soppet v. Enhanced Recovery Co. LLC*, 679 F.3d 637 (7th Cir. 2012)); *see also Ryabyschuck*, 2012 U.S. Dist. LEXIS 156176, at *7 (where "lone text message at issue was sent to a number voluntarily provided by Plaintiff to Defendant without caveat," such circumstances "unmistakably display some measure of prior consent" and "dispel any allusion to the proliferation of intrusive, nuisance calls") (citations omitted); *Ibey*, No. 12-CV-0583-H, 2012 U.S. Dist. LEXIS 91030, at *7 (dismissing TCPA claim where "Plaintiff expressly consented to contact by Defendant when he initially texted 9138 to Defendant"); *Pinkard*, 2012 U.S. Dist. LEXIS 160938, at *14 (by "providing her cellular telephone number to" Wal-Mart, plaintiff evinced "'clear and unmistakable' consent to be contacted at that number"); *Greene v. DirecTV, Inc.*, No. 10-117, 2010 U.S. Dist. LEXIS 118270, at *9-10 (N.D. Ill. Nov. 8, 2010) (by providing her cell phone number to credit reporting agency for fraud alert notifications, plaintiff expressly conseted to the call at issue).[2]

Therefore, because Plaintiff voluntarily provided his number to the Lakers in requesting that his personal message appear on the Staples Center jumbotron, the Court would conclude that he consented to receiving a confirmatory text from the Lakers.[3]

## IV. Conclusion

Given that Plaintiff admits he voluntarily texted the Lakers for the purpose of displaying a personal message during Defendant's basketball game, the Court would conclude that Plaintiff cannot amend his pleading in any way that is non-futile; the single confirmatory response challenged

---

[2] The Court would find Plaintiff's attempts to distinguish many of these cases unconvincing. *See* Pl. Opp. at 31-33. As here, the plaintiffs in *Ibey* and *Ryabyschuck* consented to receiving text messages by either initiating a text conversation or by providing a phone number in a credit card application. *Ibey*, 2012 U.S. Dist. LEXIS 91030, at *7; *Ryabyschuck*, 2012 U.S. Dist. LEXIS 156176, at *7. In addition, the plaintiff in *Pinkard* provided consent to Wal-Mart's pharmacy to call the plaintiff regarding her prescription. *Pinkard*, 2012 U.S. Dist. LEXIS 160938, at *14. Likewise, Plaintiff in this case consented to the Lakers confirmatory text regarding his request that his personal message be displayed on the Staples Center jumbotron. *See* FAC ¶ 18. Plaintiff's reliance on cases in which telemarketers or bill collectors sent messages to customers without prior solicitation or sufficient connection to a relevant, customer-initiated transaction is similarly unpersuasive. *See, e.g.*, Pl. Opp. at 25-27, 29-30. The challenged message here was sent in direct response to Plaintiff's initiating text.

[3] Though it need not reach the issue to decide this motion, the Court would similarly conclude that the FAC fails to adequately plead that Defendant used an ATDS system. While Plaintiff is correct that Defendant's software or system need only have the "capacity" to store or produce randomly or sequentially generated telephone numbers, merely parroting this definition in the FAC is insufficient to state a claim under *Twombly* and *Iqbal*. *See City of Fresno v. United States*, 709 F. Supp. 2d 888, 933 n. 31 (E.D. Cal. 2010) ("*Iqbal* requires a party to 'plead[] *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' not merely reciting the relevant statutory language."). In fact, much of Plaintiff's FAC suggests that Defendant does *not* use a system that has the capacity to generate, or to sequentially or randomly dial numbers. As Defendant points out, Plaintiff does not allege that he received the Lakers' text "randomly" but rather in direct response to Plaintiff's initiating text. *See* Def. Mot. at 16, FAC ¶¶ 18-19.

here is simply not actionable under the TCPA. Therefore, the Court would GRANT Defendant's motion to dismiss with prejudice.